JUSTICE WEBER
concurs and dissents as follows:
I concur with the opinion’s analysis under the Negligence issue and its holding that the District Court erred in directing a verdict for the Workmans. In a similar manner, on Res Ipsa Loquitur, I agree with the affirmation of the District Court’s conclusion that the case should not include the theory of res ipsa loquitur.

*75
Negligence Per Se

I dissent from the holding that a violation of § 81-4-101, MCA, can be a basis for a finding of negligence per se in this case. The opinion sets forth § 81-4-101, MCA, with its definition of a legal fence. Note that as to a barbed wire fence, at least three barbed, horizontal, well-stretched wires are required, together with additional provisions. I emphasize this because of other code sections later mentioned which do not limit a barbed wire fence to three wires.
The opinion then refers to § 81-4-103, MCA, and its statement that any person maintaining a fence which is not a legal fence is liable for damages such as “injury to stock.” The opinion then concludes there is nothing in that reference which precludes liability from other types of injuries to persons or property resulting from a livestock owner’s failure to contain animals by means of a legal fence. The opinion then concludes that while § 103 provides for civil liability for one sort of injury, it does not preclude liability for other types of injuries. This is followed by the holding which in substance states that § 81-4-101, MCA, establishes a basis for negligence per se in this case. I suggest this analysis fails to adequately consider other Montana statutes.
Part 2 of Chapter 4 of Title 81 sets forth a number of provisions regarding animals unlawfully running at large. Section 81-4-203, MCA, provides as follows:
81-4-203. Open range defined. In 81-4-204, 81-4-207, and 81-4-208, the term “open range” means all lands in the state of Montana not enclosed by a fence of not less than two wires in good repair. ... (Emphasis supplied.)
Note that a two-wire barbed wire fence which converts open range land is not adequate to constitute a ‘legal fence.”
Section 81-4-204, MCA, makes it unlawful to allow certain described animals to run at large on the open range. In a similar manner, subsequent sections refer to such things as castration of animals running at large on the open range, killing of animals running at large on open range, unlawfully allowing bulls other than purebred bulls to run on open range. It therefore is clear that for the purposes of part 2, Chapter 4 of Title 81, a two wire fence in good repair is sufficient to change land from open range and to establish liability for different purposes — all without any reference to “legal fence” as defined in 81-4-101. The result is that property owners could maintain a two-wire fence in good repair and thereby protect themselves from claims under such part 2 of Chapter 4. Nonetheless, the *76 same party could be held liable for the same claims on a different theory — that used in the present case — that the two-wire fence in good repair was still not a legal fence and therefore the owner was guilty of negligence per se. This is a significant contradiction.
Later sections in this same part demonstrate that the legislature can refer to ‘legal fence” when it desired to do so. In § 81-4-215, MCA,, the owner of various described animals is liable for damages resulting from these animals breaking into an enclosure where the fence is legal. In a similar manner, § 81-4-217, MCA, provides that if an animal breaks into an enclosure “surrounded by a legal fence” and is wrongfully on the premises, the owner may be held liable for damages. It is therefore apparent that the legislature has made a reference to legal fence when it finds it reasonable or necessary to do so.
Chapter 7 of Title 60 entitled Livestock on Highways, was enacted in 1974. As a part of its purposes it states:
60-7-101. Purpose. It is the purpose of 60-7-101 through 60-7-103 to balance the tradition of the open range and the economic and geographic problems of raising livestock with the need for safer highways and the policy of taking all feasible measures to reduce the high incidence of traffic accidents and fatalities on Montana highways.
The following section also contains a somewhat different definition of “open range” as compared to § 81-4-203, MCA:
60-7-102. Definitions. As used in 60-2-208 and 60-7-101 through 60-7-103, the following definitions apply:
(4) “Open range” means those areas of the state where livestock is raised and maintained in sufficient numbers as to constitute a significant part of the local or county economy and where such animals graze and move about generally unrestrained by fences. (Emphasis supplied.)
Note that the legislature failed to provide that generally unrestrained by fences meant unrestrained by “legal fences.”
Section 60-7-103, MCA, places upon the Department of Transportation the responsibility to fence the right-of-way of the state highway system in various places where it is constructed through open range. While there are a number of statutory requirements that the Department shall erect fences, there is no references to ‘legal fence.” I conclude that in its direct consideration of the issue of livestock and highway usage, the legislature made no reference to a need to.comply *77 with the “legal fence” definition. Under the opinion analysis in this case, if any of the fences constructed by the Department do not meet the ‘legal fence” definition of § 81-4-101, MCA, then the Department and State of Montana are subject to liability for any injury resulting from failure to construct legal fences throughout Montana.
While not a matter of record, it is common knowledge that electrified fences have been used throughout Montana for a number of years as a means of containing livestock. Electrified fences as commonly used do not meet the requirements of § 81-4-101, MCA. It will come as a shock to many livestock owners in the State of Montana to find that they are negligent per se in the use of electrified fences which fail to meet the legal fence definition of § 81-4-101, MCA, which requires three barbed, horizontal, well stretched wires, securely fastened as nearly equal distant as possible to substantial posts and with other additional provisions.
I therefore conclude that §. 81-4-101, MCA, defines various types of legal fences but does not exclude from the definition of legal fences all other types of fences not therein described. Under the facts of this case, it still would be possible that Indendi could prove negligence on the part of the Workmans in the construction of a single wire electrified fence, but that should remain as an issue of fact to be determined in the course of trial.
I would therefore hold that plaintiff Indendi has failed to prove negligence per se. As a result I dissent from this portion of the opinion.
CHIEF JUSTICE TURNAGE concurs in the foregoing dissent.